# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:24-cr-502 |
| | § | |
| RICHARD "DICK" OSBORNE, | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas; Drew Pennebaker, Trial Attorney, United States Department of Justice, Criminal Division, Fraud Section; and the Defendant, Richard "Dick" Osborne ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count 1 of the information. Count 1 charges Defendant with conspiracy to distribute and dispense, and to possess with the intent to distribute Schedule II controlled substances, namely, mixtures and substances containing detectable amounts of hydrocodone, oxycodone, and hydromorphone, in a manner not authorized by law, in violation of Title 21, United States Code, Section 846. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2.      The *statutory* maximum penalty for each violation of Title 21, United States Code, Section 846 where, as here, one of the substances in issue falls within Schedule II, is a term of imprisonment of not more than 20 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $1,000,000, or both. Additionally, Defendant must receive a term of supervised release after imprisonment of at least three years. *See* 21 U.S.C. § 841(b)(1)(c). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to two years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4.      Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied

admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Exclusion from Federal Health Care Programs and
Stipulation Regarding Drug Enforcement Administration Registration Number**

5.      Defendant understands and acknowledges that as a result of this plea, Defendant will be excluded from participating in all federal healthcare programs, including the Medicare and Medicaid Programs ("Medicare" and "Medicaid," respectively). Defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including but not limited to, the United States Department of Health and Human Services, to effectuate this exclusion within sixty days of receiving the documents. This exclusion will not affect Defendant's right to apply for and receive benefits as a beneficiary under any federal health care program, including Medicare and Medicaid.

6.      Defendant further stipulates and agrees as part of this plea that, both now and at all times in the future, his acquisition, possession, or control of a DEA Registration Number—or the acquisition, possession, or control of a DEA Registration Number by an entity at which he is employed as an agent, officer, or contractor—would constitute an imminent danger to the public health and safety. Defendant understands and acknowledges that the effect of this stipulation is that he will never again be able to own or operate an entity involved in distributing or dispensing controlled substances of any kind, and he agrees that result is necessary to protect the public.

3

**Waiver of Appeal, Collateral Review, and Statute of Limitations**

7.     Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.     Defendant also agrees that should the conviction following the Defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any charges that the United States has agreed not to seek pursuant to this Agreement) may be commenced or reinstated against Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9.     In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence that Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10.     Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

11.     The United States agrees to each of the following:

(a)     At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two-level downward adjustment under Section 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines;

(b)     If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to the operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and

5

permitting the United States and the Court to allocate their resources more efficiently.

(c) In recognition of Defendant's diagnoses no later than June 2023 of amnesia, and no later than December 2023 of Alzheimer's disease, a progressive, uncurable form of dementia that is expected to render Defendant unable to carry out his daily activities, the United States agrees that it will not oppose Defendant's anticipated request that whatever sentence of imprisonment the Court otherwise deems appropriate be served as a term of home incarceration.[1] If the Court grants Defendant's anticipated request, then the parties agree Defendant's home incarceration would be at least as restrictive as the following:

i. Defendant will remain confined to his residence at all times, except for medical appointments, court appearances, and other activities, if any, that the court specifically approves;

ii. Once Defendant's anticipated physical and/or mental deterioration necessitate a level of medical care beyond what is available through home incarceration, Defendant may petition the Court to serve his remaining time in community confinement at an appropriate inpatient medical facility, such as memory care or hospice;

iii. Unless and until Defendant becomes indigent, Defendant will bear all costs associated with his home incarceration. This condition would not prohibit Defendant from seeking benefits under Medicare or other health care benefit programs; and

iv. Defendant will not engage in any activity, commercial or otherwise, to gain income, without express Court approval. Such prohibited activity includes soliciting funds, offering services, or taking out loans or lines of credit.

**However, the United States reserves the right to withdraw its non-opposition if its retained clinical neuropsychology expert determines that Defendant's Alzheimer's diagnosis is inconsistent with the medical records provided to the government by Defendant's counsel.**

---

[1] "[H]ome confinement is not a sentence in and of itself but may be a condition of either probation, parole, supervised release, or pretrial release." *See Court and Community: An information series about U.S. Probation and Pretrial Services*, Office of Probation and Pretrial Services, Administrative Office of the U.S. Courts (2007), *available at* https://www.nyspt.uscourts.gov/forms/Home_Confinement.pdf (discussing three levels of confinement typically ordered, with home incarceration as the most restrictive, in that it "calls for 24-hour-a-day 'lock-down' at home, except for medical appointments, court appearances, and other activities that the court specifically approves").

**Agreement Binding - Southern District of Texas, Western District of Tennessee, and U.S. Department of Justice, Criminal Division, Fraud Section Only**

12.     The United States Attorney's Office for the Southern District of Texas and the United States Department of Justice, Criminal Division, Fraud Section agree that they will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the information. The United States Attorney's Office for the Western District of Tennessee agrees that in consideration for the terms stated in this Agreement, it will not further pursue civil penalties against Defendant for the recordkeeping violations described herein. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas; the United States Attorney's Office for the Western District of Tennessee; the United States Department of Justice, Criminal Division, Fraud Section; and Defendant. It does not bind any other United States Attorney's Office or any other component of the Department of Justice. The United States Attorney's Office for the Southern District of Texas, the United States Attorney's Office for the Western District of Tennessee, and the Department of Justice, Criminal Division, Fraud Section will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

**United States' Non-Waiver of Appeal**

13.     The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

> (a)     to bring the facts of this case, including evidence in the files of the United States Department of Justice, Criminal Division, Fraud Section or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

7

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

14.     Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

15.     The United States and Defendant agree to recommend to the Probation Office and the Court that the following Sentencing Guidelines apply to Defendant's Guidelines, based on the Factual Basis for the guilty plea in Paragraph 17:

8

(a) The base offense level for Count One is determined by the Drug Quantity Table in Section 2D1.1(c) of the Sentencing Guidelines;

(b) Defendant was personally involved in the distribution of, or it was reasonably foreseeable to Defendant that his coconspirators distributed, in furtherance of the conspiracy, at least approximately 900,000 hydrocodone 10 mg pills, 30,000 oxycodone 10 mg pills, 850,000 oxycodone 30 mg pills, and 50,000 hydromorphone 8 mg pills, in a manner not authorized by law. Pursuant to Section 2D1.1's Drug Conversion Table, the pills combine for more than 90,000 kg in converted drug weight; and

(c) The Defendant—as the President of a licensed distributor with a DEA registration number—abused a position of trust and, pursuant to Section 3B1.3, the Total Offense Level should be increased by 2 levels.

Defendant and the United States understand and agree that the United States or Defendant may assert at sentencing and recommend to the Probation Office that additional Guideline enhancements or adjustments beyond the Guidelines set forth above do or do not apply.

**Rights at Trial**

16. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from

9

such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

17.     Defendant is pleading guilty because he is in fact guilty of the charges contained in Count 1 of the information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

From in or around 2015 through in or around February 2022, Defendant participated in a conspiracy to distribute, and possess with the intent to distribute, controlled substances through his company Wholesale Rx d/b/a Tyler Pharmaceuticals ("Wholesale Rx"). Defendant's co-conspirators included other Wholesale Rx officers and employees; Wholesale Rx's lead external sales broker, Sheldon Dounn; Wholesale Rx's pharmacy customers; and Wholesale Rx's controlled-substance suppliers.

Through Wholesale Rx, Defendant and his co-conspirators distributed and dispensed, and possessed with the intent to distribute dispense, the following Schedule II controlled substances, almost entirely in the strengths indicated and no others, in a manner not authorized by law: hydrocodone 10 mg, oxycodone 10 mg, oxycodone 30 mg, and hydromorphone 8 mg (the "Commonly Abused Opioids").

Wholesale Rx used the Commonly Abused Opioids as "bait" to attract Houston area pill-mill pharmacy customers willing to pay well over market prices for those and other commonly abused prescription drugs, and for the non-controlled substances the Houston area pharmacies had to purchase from Wholesale Rx, not because the pharmacies needed or wanted the non-controlled substances, but rather for the sake of appearances.

10

Defendant knew that as a registered distributor, Wholesale Rx was allowed to distribute controlled substances only to the extent authorized by its registration. Defendant knew and understood that Wholesale Rx was not authorized by its registration to knowingly and intentionally aid and abet pharmacies in unlawfully distributing and dispensing Commonly Abused Opioids and other controlled substances. To the contrary, Defendant knew and understood that Wholesale Rx was required to ensure for each order shipped, each of the following was true:

a) Wholesale Rx had in place effective controls against diversion;

b) Wholesale Rx had in place a system to identify and report suspicious orders to the DEA; and

c) The pharmacy ordering the controlled substances did so for the purpose of dispensing them pursuant to valid prescriptions issued for a legitimate medical purpose within the usual course of professional practice.

However, in his ownership and operation of Wholesale Rx, Defendant and his co-conspirators knowingly and intentionally shipped orders for the Commonly Abused Opioids when they knew and understood:

a) Wholesale Rx did not have in place effective controls against diversion;

b) Wholesale Rx did not have in place a system to identify and report suspicious orders to the DEA; and

c) The pharmacies ordering the Commonly Abused Opioids from Wholesale Rx did so for purposes other than dispensing them pursuant to valid prescriptions issued for a legitimate medical purpose within the usual course of professional practice.

To stay "under the radar" of regulators and law enforcement while reaping the black-market profits from Houston area pill-mill pharmacies, Defendant and his co-conspirators used what Sheldon Dounn called his (Dounn's) "model," or "blueprint," which included:

(a)     "Caps," limiting the number of Commonly Abused Prescription Drugs that a pharmacy could purchase per month;

11

(b)     "Ratios," a purported compliance measure that made Wholesale Rx and Dounn even more money by requiring customers to purchase four non-controlled substance pills for every Commonly Abused Prescription Drug pill, even if the pharmacies neither needed nor wanted them, and even if the pharmacies purchased the same cheap generics, month after month; and

(c)     Perfunctory "due diligence" for a paper file, including applications and questionnaires, dispensing reports, and reports from third-party onsite inspections.

Defendant, Sheldon Dounn, and their co-conspirators knew these measures did not actually prevent diversion, but they expected these measures to give them "longevity" selling Commonly Abused Opioids to Houston area pill mills at substantially over-market prices. As Dounn reminded Defendant in April 2021, "[w]e can make a lot, a lot of money if we stay under the radar."

Defendant and his Wholesale Rx co-conspirators also looked to Sheldon Dounn to secure the Commonly Abused Opioids the company sold Houston area pill mills, which Dounn did by procuring the drugs from other distributors. Defendant, Dounn, and their co-conspirators understood the Commonly Abused Opioids were the lifeblood of Wholesale Rx, with Dounn describing oxycodone 30 mg pills as the "jewel of jewels," and describing the other commonly abused controlled drugs as "gravy toppings."

In furtherance of the conspiracy, Dounn coordinated with Wholesale Rx's Houston area pill-mill pharmacies, to ensure that the unlawful sales of Commonly Abused Opioids would not draw DEA's attention to Wholesale Rx, while still allowing the Houston area pharmacies to sell the Commonly Abused Opioids they purchased from Wholesale Rx almost exclusively for cash, often to street-level drug dealers who in turn sold the drugs on the street.

Defendant and his co-conspirators' knowledge about Wholesale Rx's Houston area pharmacy customers unlawfully distributing the Commonly Abused Opioids came from multiple sources, including: the customers' applications to become Wholesale Rx customers, the Texas

12

State Board of Pharmacy, third-party inspectors hired by Wholesale Rx, communication directly with the customers, and communication with other distributors.

All told, between 2015 and February 2022, through Wholesale Rx, Defendant and his co-conspirators knowingly and intentionally distributed at least approximately 900,000 hydrocodone 10 mg pills, 30,000 oxycodone 10 mg pills, 850,000 oxycodone 30 mg pills, and 50,000 hydromorphone 8 mg pills, knowing and intending that the sales were not authorized by law, and knowing and intending that the Houston area pharmacies that purchased them would and did distribute and dispense the pills outside the course of professional practice, and without any legitimate medical purpose.

## Breach of Plea Agreement

18.     If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Monetary Penalties, Assets and Financial Disclosures

19.     Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be

13

submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

20. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 9 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

**Forfeiture**

21. As part of this plea agreement, Defendant agrees to the following:

    a. to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation, including but not limited to the following specific assets:

        i. $118,524.16 seized from Iberia Bank account # xxxxxxx1014 under the name of Wholesale RX Inc, DBA Tyler Pharmaceuticals; and

        ii. $772,817.90 seized from Iberia Bank account # xxxxxxx6745 under the name of Wholesale RX Inc, DBA Tyler Pharmaceuticals.

    b. to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

    c. that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

    d. to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

14

## Civil Penalties

22. As part of this plea agreement, Defendant and the United States agree to the following:

   a. At all times relevant to the conduct described in this subsection, Wholesale Rx and Defendant conducted business at 7740-A Trinity Road, Suite 113, Cordova, TN 38018 ("Wholesale-TN"), under DEA registration #RW0424248 for audit period December 31, 2016 through April 12, 2018.

   b. In April, May, and June of 2018, DEA investigators conducted an inspection and accountability audit of Wholesale-TN for the period December 31, 2016 through April 12, 2018 and discovered at least 108 recordkeeping violations in violation of 21 U.S.C. § 842(a)(5).

   c. These violations include a shortage of 59 bottles of hydrocodone APAP 10mg/325 mg tabs, 500-count bottles; a shortage of 1 bottle of hydromorphone 8mg tabs, 100-count bottle; and overages of 15 100-count bottles of oxycodone, 41 1000-count bottles of carisoprodol, 4 1000-count bottles of tramadol, and 73 bottles of promethazine.

   d. These violations also include:

      i. Two (2) missing DEA-222 forms: forms #171962973 and #171962964;
      ii. Six (6) incorrect DEA-222 forms, missing shipment information;
      iii. Incomplete order form #171962976;
      iv. Incorrect amount of promethazine received on invoice #7828794;
      v. Sixty one (61) invoices with missing information;
      vi. Nine (9) shipments of hydrocodone without accompanying DEA-222 forms;
      vii. Nineteen (19) shipments of oxycodone on defective DEA-222 forms;
      viii. Sixteen (16) bottles of promethazine returned without invoice or accompanying records.

23. At all times relevant to the conduct described in subparagraphs c. and d. above, the CSA (21 U.S.C. § 842(c)(1)) authorized the imposition of a civil penalty of up to $25,000 for each violation of the CSA; except that violations of 21 U.S.C. § 842(a)(5) (recordkeeping and reporting violations) are subject to a civil penalty of up to $10,000 for each violation, which is subject to an inflation adjustment up to $18,759 for penalties assessed after February 12, 2024.

15

24. Defendant and the United States agree to resolve all existing or potential claims for civil penalties the United States may have against Defendant under 21 U.S.C. § 842 as follows:

a. Of the seized funds described in Paragraph 21a, the United States shall be entitled to Two Hundred and Twenty-Two Thousand and Five Hundred Dollars ($222,500), which amount shall resolve all existing or potential claims for civil penalties the United States may have against Defendant under 21 U.S.C. § 842;

b. In no event shall Defendant be obligated to pay any funds other than those seized funds described in Paragraph 21a to resolve the claims for civil penalties described in Paragraph 22.

c. If Defendant fully complies with the terms of this agreement and persists in his plea through sentencing, the United States agrees to settle and fully and finally release Defendant and Wholesale Rx from all claims for civil penalties that the United States could have asserted, or may assert in the future, under 21 U.S.C. § 842 for possible violations of the CSA, and the regulations promulgated thereunder, based on the conduct described in paragraph 22 above and its subparagraphs a-d.

**Financial Statement**

25. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this plea agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

26. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's

16

financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

**Complete Agreement**

27.     This written plea agreement, consisting of 20 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

28.     Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _____, Texas, on _____, 2024.

_____
Defendant

Subscribed and sworn to before me on _____, 2024.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

17

APPROVED:

Alamdar S. Hamdani　　　　　　　Glenn S. Leon
United States Attorney　　　　　　Chief, Fraud Section
　　　　　　　　　　　　　　　　Criminal Division
　　　　　　　　　　　　　　　　U.S. Department of Justice

By: _____　　_____
Drew Pennebaker　　　　　　　　Tate Williams
Trial Attorney　　　　　　　　　　Attorney for Defendant
Fraud Section, Criminal Division
U.S. Department of Justice

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:24-cr-502** |
| | § | |
| **RICHARD "DICK" OSBORNE,** | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending information/information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Attorney for Defendant

10.1.24
Date

*Continued on next page...*

19

I have consulted with my attorney and fully understand all my rights with respect to the information/information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____
Defendant

_____Oct. 1, 2024_____
Date